WEBSTER & a. v. ALTON AND NEW DURHAM.

The act of July 8th, 1850, providing that the road commissioners may apportion a part of the expenses of constructing a new road, to be paid by towns in the vicinity of those through which the road passes, providing the towns through which it is to pass will be excessively burdened by making the same, and those in the vicinity will be greatly benefitted, is not unconstitutional.

It is not necessary that the towns in the vicinity of those through which a road is to pass, and which may be chargeable under this statute, should be made parties to the original application for the road, or be notified of the hearing upon the question of laying out the road.

But where it is manifest that a town in the vicinity will be eventually charged by the commissioners with a portion of the expense, it is the better practice to make such town a party to the original petition for the road.

PETITION, for a highway, partly in the town of Alton, in the county of Belknap, and partly in New Durham, in this county. The petition was filed in the office of the clerk of

the common pleas for the county of Belknap, in vacation next preceding the September term, 1852, and an order of notice issued to the towns, under the rule, returnable at said September term ; at which term, the order of notice having been duly complied with, the petition was referred to the road commissioners for the counties of Belknap and Strafford, constituting a joint board.

The board thus constituted, assembled at a time and place designated, of which due notice was given to the petitioners, land owners and towns.   At said meeting a petition or motion in writing was presented to the board by each of the towns, setting forth that the expense of constructing that part of the new highway prayed for lying within said towns respectively, if laid out by the board, would be excessively burdensome to them ; that the towns of Barnstead and Gilmanton would be greatly benefitted by the construction of said highway, and praying that " if said board should lay out the same, they would take such measures and institute such proceedings as would give to said towns of Alton and New Durham the benefits of chapter 958 of the pamphlet laws, entitled an act in amendment of the laws relating to the laying out of highways, passed July 8th, 1850."

At the January term, 1853, of the common pleas of Strafford county, the board made a report of their proceedings laying out said highway, awarding damages to the land owners, to be paid by the towns of Alton and New Durham, and estimating the expense of constructing the highway, to said towns respectively, but without any action of the board, or any proceedings in reference to said towns of Gilmanton and Barnstead, or in reference to the petition or motion aforesaid in relation to the towns of Gilmanton and Barnstead.   And on motion of the town of New Durham, the report was recommitted to the board, with instructions to take definite action upon said application or motion of

the town, and make a report of their proceedings thereon in their report laying out the highway.

At a time and place designated therefor, of which due notice was given to the petitioners, the land owners, and to the towns of Alton, New Durham, Barnstead, and Gilmanton, the board assembled for the purpose of considering the application; and the towns of Alton and New Durham appeared, but the towns of Barnstead and Gilmanton did not appear. And thereupon the towns of Alton and New Durham moved the board for leave to amend their said petitions or motions in writing, by striking out the town of Gilmanton therefrom; which motions were granted by the board, and the amendments allowed. And thereafterwards, at said meeting, the board proceeded to inquire into and consider the circumstances relating to said highway, its public utility, the expense of its construction, the ability of the towns of Alton and New Durham, respectively, to bear the expense, and the benefits to said towns respectively, and other towns in the vicinity, from the construction thereof; and were of the opinion that the towns of Alton and New Durham would be respectively excessively burdened by defraying all the expenses of its construction in their respective towns; and that the town of Barnstead, being a town in the vicinity, would be greatly benefitted by its construction; and the board then caused notice to be served on said town of Barnstead, that the board would meet at a future day and hour, and at a place then designated, and would take into consideration the applications or motions in writing, of the towns of Alton and New Durham, and that the town of Barnstead might then and there appear and be heard thereon. At the time and place so designated the board assembled, and the towns of Alton, New Durham and Barnstead, appeared. The town of Barnstead objected to the commissioners' proceeding to consider the applications or motions in writing, which had been made by the towns of

Alton and New Durham, and filed with the commissioners the following as the grounds of their objection:

1. That said town was not notified, and had no opportunity to be heard at the time of laying out said highway by the commissioners.

2. That the report was recommitted to the commissioners by order of the court, for a special purpose, to wit: to notify and hear the towns of Barnstead and Gilmanton; and to proceed to a hearing without notice to both of said towns is a non-compliance with the order of the court, and therefore illegal.

The commissioners proceeded to hear and consider the applications or motions, in writing, of the towns of Alton and New Durham, notwithstanding the objections of Barnstead; and at the August term of the common pleas of this county, 1853, the commissioners made a further report of their doings relative to the applications or motions, in writing, of the towns of Alton and New Durham, setting forth that, having duly considered, and relying solely on the testimony of the witnesses examined and the statements of counsel for said several towns, made at said hearing last mentioned, said board are of opinion that the town of Barnstead will be greatly benefitted by the construction of said highway, and ought to bear a portion, to wit, one hundred and twenty-five dollars of the expense of constructing so much of said highway as lies within the town of New Durham, as just and reasonable, and that the same be apportioned to said Barnstead accordingly; and that "Barnstead ought not to bear any portion of the expense of constructing that part of the highway which lies in the town of Alton.

Upon the return of this report the petitioners moved the court that the same be accepted; and the town of Barnstead objected, and filed the following exceptions to the report:

1. The town of Barnstead was not notified of, and

never had any opportunity to be heard on the question of the necessity of laying out said highway for the accommodation of the public.

2. The town of Barnstead has never been heard or allowed to be heard on the question of the ability of the town of New Durham to build the road in their limits.

3. There has been no decision or adjudication by the commissioners since the notice to Barnstead that the construction of their. part of the highway would be excessively burdensome to either of the towns of Alton or New Durham.

4. The commissioners, before they notified Barnstead to appear and be heard, had, on an *ex parte* investigation and examination, formed their opinions and come to decisions on the questions on which they notified Barnstead that they would hear them, and in the notice so informed them. Having made up their minds beforehand on examination, they were not competent to sit as judges in the matter.

5. The commissioners proceeded to the hearing, notwithstanding the objections filed by the town of Barnstead.

6. The statute under which New Durham and the road commissioners attempt to charge Barnstead is contrary to common right, unconstitutional and void; and so are all proceedings under it.

The town of Barnstead further moved that the report be set aside. And the questions arising upon the acceptance or rejection of the report were transferred to this court for determination.

*Christie & Kingman,* for Barnstead.

We rely upon the exceptions taken by Barnstead before the commissioners and at the common pleas, and which are briefly stated and set forth in the case. They contain the grounds and reasons, in brief, for the rejection of the report, so far as Barnstead is concerned.

The proceedings under the provisions of this statute can-

not be binding on the town of Barnstead. The commissioners had prejudged the case, and were constitutionally incompetent to act. They might say to themselves that they had as much right to give heed to the first evidence laid before them as to the second.

The statute itself is unconstitutional, in providing that the decision shall be made by a board of commissioners whose judgment is made up before sitting.

The statute is impracticable. In whose favor is the execution to issue? Can a town in one county be aided by a town in another county? We say, no. From which county is the execution to issue?

*Hobbs & Sanborn*, for the petitioners.

The statute does not authorize or require the commissioners to notify the towns in the vicinity before the road is laid out. Comp. Stat. 141, § 1.

The towns of Alton and New Durham are estopped to object that the town of Gilmanton was not notified, as they requested the commissioners to strike Gilmanton out of their motion or petition. It appears, by the case, that Barnstead was duly notified of the time, place and purpose of hearing.

The statute requires the commissioners to make examination of all the circumstances relating to such road, its public utility, &c., if they should be of opinion that the town or towns through which the proposed road passes would be excessively burdened, &c., and that any other town or towns in the vicinity in the county or counties through which the road passes would be greatly benefitted by its construction, they shall then give notice. Comp. Stat. 141, § 1.

The commissioners have specially returned the facts required by the statute, and duly followed it, and the report should be accepted.

*N. & G. N. Eastman*, upon the same side.

The counsel for Barnstead contend that the statute is un-

constitutional. In this we beg leave to differ from them. The burden is not imposed upon that town without an equivalent. Their money is taken for their advantage, and for a public benefit.

They had a full opportunity to be heard upon all the questions provided by the statute. They were twice duly notified. They did not see fit to be present on the first notice, but it was their own fault.

The first hearing was a merely preliminary matter, in order to determine whether it was necessary to issue a notice. It was analogous to the issuing of a warrant upon a complaint, without prejudging the case.

*Woodman* and *Rollins*, for Alton and New Durham.

Even admitting the principle contended for by the counsel for Barnstead, that notice should have been given to that town, of the original proceedings, we think the statute can be carried into effect. We see no difficulty in having an execution issued against that town. It would properly come from the county where proceedings were first had; the county of Belknap. The provision for an execution is only a cumulative remedy.

EASTMAN, J. The disposition of this case depends upon the construction and constitutionality of the first section of the act of July 8th, 1850; Pamphlet Laws, ch. 958, or Comp. Stat. ch. 55.

That section is as follows: " Whenever, upon any petition referred to them, the road commissioners for any county or counties in this State shall be of opinion that the road prayed for, or any portion thereof, is demanded for the public accommodation, and shall lay out the same, if in their opinion the town or towns through which the same passes would be excessively burdened by defraying the whole expenses of constructing the same, said commissioners shall make examination of all the circumstances relating to such

road, its public utility, the expense of its construction, the ability of such town or towns to bear the expense, and the benefit to such town or towns and any other towns in the vicinity, from the construction thereof; and if upon such examination such commissioners shall be of opinion that the town or towns through which the proposed road passes would be excessively burdened by defraying all the expenses of its construction, and that any other town or towns in the vicinity, in the county or counties through which said road passes, would be greatly benefitted by its construction, they shall give notice as in other cases to such other town or towns as in their opinion would be thus greatly benefitted, of the time and place when and where they may be heard in the premises; and if upon such hearing said commissioners shall be of opinion that such town or towns ought to bear any portion of the expenses of constructing such road, they shall, in their report laying out the same, apportion such part of said expenses as they shall deem just and reasonable, to such town or towns in the county or counties through which said road passes as will in their judgment be greatly benefitted by its construction, to be borne by such town or towns; and any such report of said commissioners being accepted and judgment rendered thereon, shall be final and conclusive, and execution issue accordingly."

The other sections of the act provide, in substance, that the towns in the vicinity which are required by the commissioners to defray a part of the expense of making the road, shall be liable for neglecting to comply with the requirements, in the same way and manner as the towns through which the highway passes are liable for neglecting to build the same; and that any town may raise money by taxation for the purpose of paying the proportion of the expense of laying out and building any road in any other town, ordered by the road commissioners to be paid by such town.

Prior to the passage of this act, the damages assessed upon the laying out or altering of any highway for the accommodation of the public, were in all cases to be paid by the town in which the land taken for the highway should lie ; with this proviso, that the court of common pleas, if they deemed the expense of laying out any new highway, paying the damages and building the same, unjustly burdensome to any town, might order a part, not exceeeding one half of such expense, to be paid by the county. Rev. Stat. ch. 52, §§ 7, 8.

And the costs of laying out and of widening and straightening highways from town to town, or through land not in any town, were and still are to be paid by the county. Rev. Stat. ch. 52, § 9.

Prior to this act, also, the provisions in regard to notice were, that the petitioners for the road, the land owners over whose land the road should be laid, and the selectmen of the towns through which the road was to pass, were to be notified of the time and place of the hearing. Rev. Stat. ch. 49, §§ 2 to 6 inclusive ; also ch. 51, § 2.

No provision is to be found in the statutes relating to the laying out of highways, which requires the county to be notified under any circumstances.

Under the general provisions of the law, in ordinary cases, where no assistance from adjoining towns is expected, the road commissioners, upon a petition being referred to them, after giving notice to all parties required to be notified, proceed to examine the route and decide upon the public necessity for the road. If in their opinion the public good requires the road to be made, they lay it out, accurately describing it; and then assess the damages to the owners of land taken for the road, and estimate the expense of making the same.

But under the act of 1850, the proper practice and the requirement of the law appears to us to be this. The commissioners first give notice to the towns through which the

road is to pass, and to the land owners and petitioners as in ordinary cases, and after hearing had, decide whether the public good requires the highway to be made; and if they think it does, they proceed to lay it out.   Whether the highway is demanded for the public accommodation, is the principle upon which their decision is to turn.   If they come to the conclusion that the public good requires the road to be made, and they accordingly lay it out, they will, of course, assess the damages to the land owners and estimate the expense of making it; and if, upon looking at the amount, either upon the motion or suggestion of the towns through which the road is to pass, or upon their own motion, it shall appear to them that the burden to the towns will be excessive, they will then review all the circumstances relating to the highway, its public utility, and the expense of its construction; and they will also go into an inquiry as to the ability of the towns through which the road passes to bear the expense.   This is a new inquiry.   They will also inquire into the probable benefit to such towns, and likewise into the benefit it may be to other towns in the vicinity. This, also, is a new inquiry.   If, after going into this preliminary examination, the commissioners shall arrive at the conclusion that the towns through which the road is to pass would probably be excessively burdened by defraying all the expenses of the construction, and that other towns in the vicinity would probably be greatly benefitted by having the road made, they are then required to give notice, in the usual way of notifying towns, to such towns as they may suppose might be benefitted, that they may be heard upon the matter.

In this investigation which the commissioners make prior to giving notice to the towns in the vicinity, they should proceed so far as to see that it is a case proper for further examination, and for notice to other towns.   But it is not till after the hearing, upon notice, that the commissioners decide whether the towns supposed to be benefitted shall

bear any portion of the expense of constructing the road or not. If they think they should, they will state the fact in their report, and apportion the damages accordingly. But if not, they will so report their opinion.

The statute appears intended to apply only to extraordinary cases, where the towns through which the road is to pass will be excessively burdened, and others in the vicinity greatly benefitted. It is not intended to change the ordinary rule that every town shall make its own highways; nor to alter the law designating the parties to be notified on original applications, being those who are named in the petitions for the roads. It is not till after the commissioners have decided that the public good demands the road to be made, and after they have come to the conclusion that the towns through which it is to pass will probably be excessively burdened and others greatly benefitted, that the question arises, what part, if any, the towns supposed to be benefitted shall contribute; and the statute contemplates no notice to the towns in the vicinity until that time. It is only after the commissioners have gone into some investigation of the matter, that it can be known to them whether the burdens will probably be excessive, and likewise whether other towns are to be benefitted, and if so, what ones. And it is only then that they can know whether the case is one requiring further proceedings, and upon what towns notice shall be served.

It is certainly desirable to permit those towns to be heard on the question of laying out a road, which will have to contribute to the expense of its construction, and where it is manifest that the adjoining towns will eventually have to share a part of the expense under the provisions of this act, the better practice, no doubt, would be to have them included in the original application and petition for the road. But in going beyond the towns through which the road is to pass, unless it is quite manifest that others in the vicinity should share in the burden of its construction, there is an

impracticability in deciding as to what towns shall be in-
cluded in the petition, and be originally notified. To what
extent shall the petitioners go? Where shall they stop? It
would be a great hardship upon the petitioners to require
them to make all the towns in the vicinity parties to the
original proceedings, at the risk of being compelled to pay
bills of cost to them all, as they would be obliged to do in
case they failed to charge them with a part of the expense;
and perhaps a still greater, to reject every report of road
commissioners, in the manner demanded in this case, be-
cause the original petition did not embrace the requisite
number of towns. It would, moreover, cause the towns
which should be made parties and be discharged, much
trouble and expense beyond any amount of costs they might
recover of the petitioners.

But without dwelling longer upon the matter, we are sat-
isfied that by a proper construction of the statute, the towns
through which the road does not pass, are not necessarily to
be notified until after the commissioners have decided to lay
out the road, and have examined in a preliminary manner the
question of the burden of making the road, and the benefit
that may arise to adjoining towns from its construction.

A town in the vicinity cannot be charged with a portion
of the expense of constructing the road until after it has
been notified and heard, and it is upon that question that
the statute contemplates that it shall be heard. In laying
out the road, the public good and accommodation is the
only consideration that is to govern the commissioners; and
whether it shall be laid out or not is to be decided regard-
less of the question upon whom the burden of making the
road is to fall. It is no doubt true that the commissioners,
in laying the highway, and in the preliminary examination
which they may make as to the ability of the towns through
which the road is to pass, and the benefits that may accrue
to towns in the vicinity, must receive impressions as to the
liability of the latter; and such the statute contemplates;

but whether the towns in the vicinity shall in fact be charged, and if so, to what extent, are still open questions, to be decided after notice given. And the commissioners would be as unbiassed and as proper a tribunal to decide these questions, (and probably much more so,) as selectmen to act upon the numerous petitions presented to them for highways in their respective towns.

Such being our opinion of the construction to be put upon the act of 1850, the four first exceptions taken to the acceptance of the report are, of course, overruled. We would remark, also, in regard to the second, third and fourth exceptions, that they do not appear to be well founded in fact. The commissioners state in their report that, after the report was recommitted to them upon the application of Alton and New Durham, to charge Gilmanton and Barnstead with a part of the expense of constructing the road, they gave due notice to all of the several towns, naming them, and to the petitioners, before proceeding to the inquiry in regard to the ability of the towns of Alton and New Durham to bear the expense. Barnstead, then, was notified of both the hearings after the recommitment of the report, and might have been present had they seen fit.

The fifth exception is, that the commissioners proceeded to the hearing, notwithstanding the objections filed by the town of Barnstead. The first of these objections was that the town was not notified and heard as to the laying out of the highway. It is the same as the first exception taken to the acceptance of the report, and is overruled for the same reason.

The second objection was that the report was recommitted to the commissioners by order of the court, to notify and hear the towns of Barnstead and Gilmanton; and to proceed to a hearing without notice to both of the towns was a non-compliance with the order of court, and therefore illegal. It appears by the case that the proceedings against Barnstead and Gilmanton were upon motion and petition

of the towns of Alton and New Durham, and that afterwards they chose to drop the application against Gilmanton, probably because they became satisfied that it could not be sustained. However that may be, no reason occurs to us why Barnstead can complain. The proceedings against that town appear to have been legal, and conformable to statute, and it is not in a situation to say that the order as to the other town has not been fully carried out. Barnstead did not move for proceedings against Gilmanton. The towns that did have withdrawn their application, and the commissioners themselves have not seen fit to charge that town, although they report that they have examined into the benefit that the road would be to towns in the vicinity of Alton and New Durham. We do not discover any good reason for sustaining this exception.

The last exception is, that the statute by which it is attempted to charge the town of Barnstead with a part of the expense is unconstitutional.

It will not be questioned that the legislature have the power to pass acts by which the land of individuals may be taken to make public highways, and by which taxes may be assessed upon the inhabitants of the towns through which the highways pass, to pay for the land so taken, and the making of the roads. This has always been done, as is now substantially provided in chapter thirty-one of the Revised Statutes. The property thus taken, whether for the highways themselves or the making of them, is for the public use and benefit, and the acts done are by the authority of the legislature. Bill of Rights, §§ 12, 28. Upon what principle is it that the towns through which the highways pass are required to make them, and that taxes are assessed therefor? Evidently upon the ground that the town, as a town, is to be benefitted by the road. No doubt there may be individuals in every town concerning whom it would be difficult to discover wherein they are benefitted by some roads made therein. Still it would be utterly impracticable to draw the

line and say who should be taxed and who should not, for such purposes.

It is upon the same principle, that of benefit and advantage to the public in the counties, that the legislature have seen fit to authorize the court of common pleas to order a part of the expense of making and repairing highways to be paid by the county, whenever they may judge the expense to be unjustly burdensome to the towns. Rev. Stat. ch. 52, § 8; also, ch. 55, §§ 18, 19.

By the first section of the act of 1850, under which Barnstead is sought to be charged, a town can only be required to contribute to the construction of the road, when the town, as a town, is to be greatly benefitted. It is for a public use and benefit that the money is to be taken, and it is by the authority of the legislature; and the objection that it is unconstitutionally taken would seem to apply to most of our laws in regard to highways as well as to this.

We have given to this case more than ordinary consideration. The important question involved in it is this; must the towns through which the road does not pass, but which may possibly be charged with a portion of the expense under this statute, be made parties to the original and primary petition to lay out the road? And we think that the specific requirement of the act is too clear upon the question to authorize us to say that they must be so made. The language appears to be too explicit to admit of doubt. And the only way to avoid the force of the statute is to refuse to carry it into effect, because it does not provide for seasonable and due notice. But is this really so? Are not the towns to be notified and heard upon the particular question that is to affect their interests? We have endeavored to show that they are; and that it is after this hearing and notice, and upon the evidence then presented, that the decision is made, for or against them. And in the present case the commissioners have expressly reported that in coming to the conclusion to charge Barnstead, they relied *solely* upon the

testimony and statements laid before them at *that* hearing. It seems, also, that their views in regard to Alton were changed at that hearing, for they award nothing to that town, notwithstanding they state in their report that at the previous examination they were of opinion that Alton, as well as New Durham, would be excessively burdened by defraying all the expenses of constructing the road.

We do not propose to enter into any discussion as to the propriety of the provisions of the act of 1850. We do not regard it as falling within our particular province so to do. It occurs to us, however, that the act is not more open to condemnation than the statutes to which we have referred, making counties liable to contribute to the building and repairing highways where they have had no notice whatever upon their being laid out, nor any voice upon that question.

There is no doubt of the great fundamental principle, that parties shall be heard before judgment shall be passed against them; and we trust never to trespass upon it. But when the legislature have fixed the particular time and manner of giving notice to parties, it is not for us to set aside the statute, unless it is clearly unconstitutional.

There is no doubt, either, that road commissioners, who are to decide upon questions that legally come before them, should be as unbiassed and free from any previous adjudication of the question, as the circumstances and the nature of their duties will permit. But they are an independent tribunal, acting between the petitioners and the towns; and although they may, to some extent, form opinions upon the question of the liability of adjoining towns, and are in some instances necessarily obliged to, so as to know what towns to notify, yet these impressions do not render them incompetent to act upon the main question, which is afterwards to be fully considered and decided by them. In such cases every judicious man will keep his mind open till the final hearing upon the merits of the question.

Upon the whole, we do not regard this act as unconstitu-

tional, neither do we discover any inpracticability in carrying it into effect; and the exceptions must be overruled, and

*Judgment entered on the report.*